UNITED STATES of America,

v.

Corey JONES, Defendant.

No. 08 Cr. 0535(VM).

United States District Court,
S.D. New York.

July 17, 2008.

Don D. Buchwald, Kelley Drye & Warren, LLP, New York, NY, for Corey Jones.

Steve C. Lee, United States Attorney, New York, NY, for United States of America.

## DECISION AND ORDER

### VICTOR MARRERO, District Judge.

Defendant Corey Jones ("C Jones") appeals the detention order issued by Magistrate Judge Henry Pitman ("Magistrate Judge Pitman") dated June 11, 2008 (the "Order"). For the reasons set forth below, the Order is AFFIRMED.

### I. *BACKGROUND*

Sometime in the late evening of Friday, May 23, 2008 and the early morning hours of Saturday May 24, 2008, Frank Jones [1] (the "Victim"), who had provided information to the Government concerning illegal firearms and narcotics dealing, was present with several others [2] in the vicinity of West 165th Street and Ogden Avenue in the Bronx ("165th and Ogden"). A few minutes after midnight on May 24, 2008, several shots were fired at that location. McKoy was shot in the toe and taken to Lincoln Hospital. She was released in the morning of the same day. The Victim was shot and also taken to Lincoln Hospital, where he died from his wounds. After an investigation of the shooting, New York City Police Department ("NYPD") authorities arrested C Jones and his brother Jason Jones ("Jason") (collectively, "Defendants").

Defendants were arrested on or about May 30, 2008, on federal charges relating to the murder of the Victim and presented before Magistrate Judge Michael Dollinger. On June 4, 2008, a bail hearing (the "Bail Hearing") took place before Magistrate Judge Pitman, at which C Jones called four witnesses: McKoy, Yvette Vergara ("Vergara"), Dennis DiLone ("DiLone"), and Kelly Ann Gonzalez ("Gonzalez"). The Bail Hearing continued on June 9, 2008, and the Government called NYPD Detective Michael Diskin ("Diskin"). On June 11, 2008, Magistrate Judge Pitman issued the Order finding that in light of the presumption against C Jones, the seriousness of the crime, C Jones's history and characteristics, and the risk of danger to the community, all weighed against C Jones and thus warranted his detention.

C Jones appealed the Order to this Court. On July 1, 2008, the Court held an appellate bail hearing (the "Appeal Hearing") at which C Jones called Detective Daniel Mullarkey ("Mullarkey") from the NYPD to testify. At the conclusion of the hearing that day, the Court directed the Government to provide for the Court's *ex parte in camera* inspection a copy of the relevant portions of the transcript of the grand jury proceeding pertaining to C Jones. On July 9, 2008, the Court reviewed the document, which was redacted to remove and thereby protect the identities of confidential witnesses (the "Transcript"), and returned it to the Government. On July 10, 2008, the Appeal Hearing was continued and C Jones called NYPD Detective Steven Smith ("Smith") to testify.

### II. *DISCUSSION*

#### A. *THE BAIL REFORM ACT*

A district court undertakes a *de novo* review of a magistrate judge's decision to release or detain a defendant. *See United States v. Leon,* 766 F.2d 77, 80 (2d Cir.1985); *United States v. Gotti,* 358

---

**1.** Frank Jones is not related to either defendant in this case.

**2.** The bystanders included Shakeinne Jones ("Shakeinne"), the Victim's brother and JoAnn McKoy ("McKoy").

F.Supp.2d 280, 282 (S.D.N.Y.2005); *United States v. Smith*, No. 02 Cr. 1399, 2002 WL 31521159, at *1 (S.D.N.Y. Nov.13, 2002).

 Under 18 U.S.C. § 3142 (the "Bail Reform Act"), there is a rebuttable presumption (the "Presumption") that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] and the safety of the community if the judicial officer finds there is probable cause to believe that the person committed ... an offense under [18 U.S.C. § 924(c) ]." 18 U.S.C. § 3142(e). The burden to rebut such a presumption rests on the defendant, who must produce "evidence that he does not pose a danger to the community or a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir.2001). As for the dangerousness prong, detention must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f); *see also United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). With regard to the standards concerning flight risk and that no conditions will reasonably assure the defendant's continued presence, to detain the defendant, the Court need only make these findings by a preponderance of the evidence. *See Chimurenga*, 760 F.2d at 405. If the defendant does produce such evidence, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.*

The Bail Reform Act factors to be considered in determining "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community" include: "the nature and circumstances of the offense charged" (the "Circumstances Factor"); "the history and characteristics of the [defendant]" (the "History Factor"); "the na-ture and seriousness of the danger to any person or the community that would be posed by the [defendant's] release" (the "Danger Factor"); and "the weight of the evidence against the [defendant]" (the "Weight Factor") (collectively, the "Factors"). 18 U.S.C. § 3142(g).

## B. APPLICATION OF STANDARDS

After taking into account, among other considerations, C Jones's appeal of the Order and the arguments made by counsel at the Appeal Hearing and in their memoranda to the Court, the transcript of the Bail Hearing, the Criminal Complaint dated May 29, 2008 (the "Complaint"), and the Transcript, the Court affirms the Order.

### 1. The Presumption

 C Jones, among other charges, is accused of carrying and using a firearm during and in relation to a crime of violence, and of aiding and abetting the use, carrying, and possession of a firearm, which was discharged at the Victim, who was a Government witness, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Under 18 U.S.C. § 3142(e), this offense creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community," and that, C Jones should be detained during the pendency of his case.

### 2 The Factors

C Jones asserts that, taking into account the evidence presented at the Bail and Appeal Hearings, the Presumption has been sufficiently rebutted. The Court is not persuaded.

#### a. The Circumstances Factor

The Court finds that the Circumstances Factor weighs in favor of detention. C Jones is charged with several counts relat-

ing to the premeditated murder of a Government witness. These are charges for which he is eligible for the death penalty.

As stated in the Complaint, the Victim was arrested as part of an investigation into narcotics and firearms trafficking in The Bronx. Following the Victim's arrest, he entered into a cooperation agreement with the Government and in furtherance of it participated in several purchases of illegal firearms and narcotics in The Bronx, leading to a number of additional arrests.

According to the Complaint, a witness ("Witness") who was present at 165th and Ogden at approximately 12:00 a.m. on May 24, 2008, provided Mullarkey with information regarding the murder of the Victim. The Witness observed C Jones arguing with the Victim, and C Jones allegedly said words to the effect that everybody in the neighborhood knew that the Victim was a "snitch" and "down with the police." The Witness then stated that C Jones walked away from the Victim, headed towards Summit Avenue, and shortly after returned to 165th and Ogden with Jason and approached the Victim. The Witness asserted that, moments later, C Jones passed Jason a dark colored object, which the Witness believed to be a firearm, and that Jason fired multiple shots at the Victim.

The murder of a Government witness is one of the most serious crimes that may be brought against anyone. Retaliating with deadly violence against Government witnesses constitutes not only an offense against the individual victim, but a grave assault against the justice system and rule of law. It intimidates future potential witnesses and makes them less likely to come forward and assist investigations and prosecutions of crimes, thereby frustrating law enforcement's efforts and endangering the community. The severity of both the crime and the potential sentence, which includes the possibility of the death penalty, "creates risks of dangerousness and non-appearance that weigh in favor of detention." Order at 9–10; *see, e.g., Gotti,* 358 F.Supp.2d at 284 (finding defendant's alleged involvement in attempted murders as a factor weighing in favor of detention); *United States v. Estela Melendez,* 700 F.Supp. 82, 84 (D.Puerto Rico 1988) (finding evidence of defendant's participation in an attempt to murder a Government witness justified detention).

b. *The History Factor*

The Court finds that the History Factor also supports detention. C Jones, who was convicted of two prior felonies, has a significant criminal history and a history of noncompliance with supervised release as imposed by the Probation Department of this District.

On December 18, 1999, C Jones was convicted in New York state court of Attempted Criminal Sale of a Controlled Substance (the "Attempted Sale") and was sentenced to five years' probation. While serving probation for the Attempted Sale, he continued his involvement in selling crack cocaine and was eventually arrested and charged federally. On March 12, 2001 before United States District Judge Gerard E. Lynch ("Judge Lynch"), C Jones pled guilty to conspiracy to distribute and possess with intent to distribute crack cocaine (the "Cocaine Conspiracy"). In the Pre–Sentence Report, the Probation Department found that he also sold firearms and ammunition to undercover agents during the course of his narcotics sales. Although C Jones was not charged with a separate firearms offense, his sale of firearms was taken into account when Judge Lynch sentenced him to 57 months' imprisonment.

C Jones did not comply with the conditions of supervised release for the Cocaine

Conspiracy. By an Amended Request for Court Action dated February 21, 2006 (the "Amended Request"), the Probation Department, after supervising C Jones for only eight months, concluded that he was "not serious about living a law-abiding, drug-free lifestyle" and that "his recent violent, criminal behavior leads [the Probation Department] to believe that [C Jones] poses a risk to others." (Amended Request at 5, attached as Ex. B to Government's Memorandum Opposing Corey Jones' Appeal, dated June 24, 2008.) The Amended Request also stated that, throughout C Jones's supervision term, he "failed to obtain gainful employment" despite the assistance of the Probation Department's programs, which are specifically designed to assist ex-offenders, because he asserted that he was "over-qualified." (*Id.* at 4.) Judge Lynch eventually revoked C Jones's supervised release and remanded him for an additional six months of imprisonment.

This record demonstrates that C Jones has developed a pattern of disregarding the orders of both federal and state courts and has displayed violent and uncooperative behavior. Accordingly, based upon C Jones's criminal history, past failures to abide by conditions of probation and supervised release, and his refusal to secure gainful employment, the History Factor weighs in favor of detention.

### c. *The Danger Factor*

The Court finds that the Danger Factor also weighs in favor of detention. As established by the Pre–Sentence Report in the Cocaine Conspiracy, C Jones has possessed and trafficked in firearms in the past, and as noted by Judge Lynch and the Probation Department, he has repeatedly exhibited violent behavior. The murder of a Government witness, by its nature, intimidates potential witnesses. The release of C Jones on bail, thereby allowing him to return to the community where the Victim's murder took place, would create a danger for all witnesses irrespective of whether they have cooperated with the Government. Accordingly, the Danger Factor justifies detention.

### d. *The Weight Factor*

At the Bail and Appeal Hearings, C Jones focused—almost exclusively—on the Weight Factor. He argued that, through those hearings, he had established by a preponderance of the evidence that he had not participated in the murder of the Victim, and that it would therefore be a constitutional violation of due process to detain him without bail. The Court finds that although both parties made persuasive arguments regarding the weight of the evidence, this factor, even if all credibility issues were viewed in a light favorable to C Jones, does not tip the balance in favor of allowing his release on bail.

It is important to note that, because the Bail Reform Act "neither requires nor permits a pretrial determination that the person is guilty," the Court's function in examining the weight of the evidence is not to determine guilt or innocence. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir.1985) (citations omitted). The Weight Factor "may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." *Motamedi*, 767 F.2d at 1408 (*citing* 18 U.S.C. § 3142(g)) (additional citations omitted). Courts generally consider the Weight Factor as the "least important" of the Factors. *See id.; United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir.1991).

At the Bail and Appeal Hearings, C Jones called six witnesses to the stand:

McKoy; Vergara; Dilone; Gonzalez; Mullarkey; and Smith.

### i. *McKoy*

McKoy was a secondary victim of the shooting, having been shot in the foot and grazed in the neck. She testified that she had known C Jones for many years, and that she was approximately six to eight feet from the Victim at the time of the shooting. McKoy testified that C Jones was not at the scene of the shooting. McKoy's testimony, however, is of limited probative value because she testified that she did see the face of the shooter, and that she did not know the identity of the shooter.

Furthermore, McKoy's testimony was undermined by other inconsistent statements or failures of memory. McKoy testified that she was with a "whole bunch of people [she] knew for years" at the time of the shooting, and yet, she was unable to identify, either by a formal name or nickname, any other one of those individuals present prior to the shooting. (6/4/2008 Bail Hearing Tr. ("6/4/2008 Tr.") 14:7–8, 27:12–28:8.) Additionally, McKoy repeatedly stated on direct examination that an individual assisting the Victim after he was shot stated that "they" "shot my brother." Led by defense counsel's further questioning, she later changed her testimony to state that the individual said "someone" "shot my brother." (*Id.* at 33:11–24.) Also, McKoy's testimony that prior to the shooting "everything was peaceful," is contradicted by the testimony of Diskin, who testified that during the investigation, two witnesses told him that at the time of the murder a large group of black males at the site of the shooting were "loud," meaning that they were having an argument. (6/4/2008 Bail Hearing Tr. ("6/4/2008 Tr.") 19:22–25; 6/9/2008 Tr. 5:1–3, 6:1–17.)

### ii. *Vergara, Dilone, and Gonzalez*

C Jones called Vergara, Dilone, and Gonzalez (collectively, the "Alibi Witnesses") as alibi witnesses at the Bail Hearing. The Alibi Witnesses testified that at the time of the shooting they were present with C Jones at the apartment of Vergara. The Government asserts that these witnesses have significant credibility issues.

Vergara testified that she is a friend of C Jones and has known him since she was a little girl. Vergara testified that she does not want anything bad to happen to C Jones and does not want to see him go to jail.

Dilone is currently in a relationship with Vergara, creating a potential bias in favor of a friend of his girlfriend. Furthermore, Dilone is a convicted felon, including a conviction for conspiracy to possess cocaine and two convictions related to the sale of heroin.

Additionally, Vergara, Dilone, and Gonzalez testified that, immediately prior to testifying at the Bail Hearing, they discussed their likely testimony with each other.

Arguably, taken alone, none of these issues of credibility and bias may be so grave as to necessarily render the Alibi Witnesses' testimony not credible. For instance, it would be not surprising that C Jones would be with friends on a late evening or early morning during the weekend, and that Vergara is a friend of his, though in some ways may weaken her testimony, does not necessarily render it completely untrustworthy. Additionally, other than Gonzalez discussing her planned testimony with the other Alibi Witnesses, the Government has not pointed to any specific sign of bias or other evidence that would call into question the

credibility of Gonzalez's testimony. Although, taken as a whole, the issues raised of bias and credibility may cast a shadow of doubt over the asserted alibi, the Court cannot say that C Jones's claimed alibi as established through Vergara, Dilone, and Gonzalez was not credible.

### iii. Statements of Shakeinne

Although Shakeinne was not present and did not testify at the Bail or Appeal Hearing, C Jones called Smith at the Appeal Hearing purportedly to testify as to exculpatory statements Shakeinne allegedly made concerning C Jones.[3]

Smith testified that on the evening of May 24, 2008, after the Victim had died, Shakeinne approached Smith at a police precinct and allegedly informed him that he had seen the person who shot his brother. Smith testified that Shakeinne told him the shooter was a "male wearing a white sweatshirt with the hood of it on his head, but halfway off so that he could fully see his face and now state that he was a light-skinned male, possibly even of a Hispanic nature" (the "Evening Statement"). (7/10/2008 Appeal Hearing Tr. ("7/10/2008 Tr.") 31:15–19.) Smith, however, did not find the Evening Statement credible and believed that Shakeinne was not being honest with him because the Evening Statement conflicted with the account Shakeinne had given Mullarkey earlier on May 24, 2008. Mullarkey testified at the Appeal Hearing that in the early morning hours of May 24, 2008, Shakeinne told him at Lincoln Hospital that "an unknown male in a dark hoodie approached" the Victim with the hoodie pulled so tight on the face that Shakeinne could not recognize who the man was, and the unknown man "fired eight to nine shots" (the "Morning Statement"). (7/1/2008 Appeal Hearing Tr. ("7/1/2008 Tr.") 40:16–41:6.) Smith further testified that Mullarkey had informed him that, during the morning of May 24, 2008, Shakeinne stated that the shooter's sweatshirt was pulled so tight that Shakeinne could not "even see the color of [the shooter's] skin or his race." (7/10/08 Tr. 45:14–16.)

The Court finds that, based on Shakeinne's alleged conflicting accounts of the shooter's identity, the statements made by Shakeinne pertaining to the shooter's identity lack credibility. Accordingly, the Court affords little, if any, probative value to Shakeinne's Morning and Evening Statements.

### v. The Witness

In response to the Court's request at the July 1, 2008 hearing, the Government produced for the Court's review, in camera and ex parte, the portion of the Transcript containing the testimony of the Witness cited in the Complaint that was the subject of much of Mullarkey's testimony at the Appeal Hearing. See United States v. Gallo, 653 F.Supp. 320, 331 (E.D.N.Y.1986) ("Reliance upon an in camera review of a witness' grand jury testimony in making a bail determination is entirely appropriate in cases involving a threat to a witness, particularly where the grand jury testimony and the hearing testimony of the witness may be relevant on the credibility issue."). In accordance with the Court's

---

**3.** The Federal Rules of Evidence do not apply at bail hearings and courts often rely on hearsay evidence when determining detention decisions. *See United States v. Abuhamra,* 389 F.3d 309, 321 n. 7 (2d Cir.2004); *see also* 18 U.S.C. § 3142(f)(2)(B) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."). At the Appeal Hearing, the Court referred to the Rules of Evidence to provide a procedural framework and informal guidance for the orderly conduct of the proceedings.

request, the Government redacted the Transcript to eliminate all personal identifying characteristics of the Witness, thus protecting the Witness's anonymity. Upon completion of this review, the Court returned the Transcript to the Government, whose representative remained present at all times during the Court's inspection.

The Court finds that the Transcript substantially supports Mullarkey' s testimony and the information provided by the Witness and cited in the Complaint. Considering not only the number of other witnesses but also the credibility and consistency of their testimony, the Court finds that the Witness's testimony based on firsthand observation and knowledge of the circumstances is at least as persuasive as the testimony presented by McKoy and the Alibi Witnesses.

After reviewing the evidence presented at the Bail and Appeal Hearings in its totality, the Court is not persuaded that on balance the Weight Factor favors C Jones. The Court finds that even if it were to view all of the evidence presented on the record of this proceeding with a most favorable view of C Jones's assertions, the weight of the evidence would, at most, be balanced evenly between the Government's and C Jones's positions. Thus, the weight of the evidence does not overcome the presumption of detention. *See, e.g., Burka v. New York City Transit Auth.,* 739 F.Supp. 814, 843 n. 23 (S.D.N.Y.1990) (stating that when a party has to meet a preponderance of the evidence standard, it "would have to meet its burden by proving more than a simple equality of the evidence. The scales would have to tip in favor of the [party with the burden] based upon the quality and persuasiveness of the evidence.").

Accordingly, the Court finds that C Jones has failed to rebut the Presumption. Conversely, the Court concludes that the Government has met its burden of proving by clear and convincing evidence that C Jones does pose a danger to the community. Furthermore, taking into account C Jones's weak economic ties to the community, the seriousness of the charges against him, the severity of the potential sentence in this case, and his history of failing to abide by court orders and the directives of the Probation Department, the Court finds that the Government has met its burden of proving by a preponderance of the evidence that C Jones presents a flight risk, and that no conditions will reasonably assure his continued presence in this proceeding.

### III. *ORDER*

Accordingly, it is hereby

**ORDERED** that the order dated June 11, 2008 signed by Magistrate Judge Henry Pitman, ordering that defendant Corey Jones be detained pending the trial of the charges against him, is AFFIRMED.

**SO ORDERED.**