**UNITED STATES of America,**

v.

**Corey JONES, Defendant.**

**No. 08 Cr. 0535(VM).**

United States District Court,
S.D. New York.

Oct. 22, 2008.

Don D. Buchwald, Kelley Drye & Warren, LLP, Lee Alan Ginsberg, Freeman Nooter & Ginsberg, Frederick Harvey Cohn, Law Office of Frederick H. Cohn, George Robert Goltzer, New York, NY, for Defendant.

Steve C. Lee, New York, NY, David Vincent Harbach, U.S. Attorney's Office, White Plains, NY, for United States of America.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Defendant Corey Jones was indicted in this action on a charge of murder of a

Government witness. At arraignment he applied for release on bail. Magistrate Judge Pitman, by an order dated June 11, 2008 (the "June 11 Order"), found that the presumption against Corey Jones, the seriousness of the crime, Corey Jones's history and characteristics, and the risk of danger to the community factors all weighed against Corey Jones's application for bail and thus warranted his detention.

Corey Jones appealed the June 11 Order to the Court, and by an order dated July 17, 2008 (the "July 17 Order"), the Court affirmed the June 11 Order. Corey Jones, by letter from his attorney dated August 28, 2008, notified the Court that he intended to renew his bail application (the "Renewed Application") based upon information which has come to light subsequent to issuing the July 17 Order. For the reasons set forth below, the Renewed Application is GRANTED.

## I. BACKGROUND SUBSEQUENT TO THE JULY 17 ORDER[1]

By letter dated September 9, 2008 (the "September 9 Letter"), Frederick Cohn, who is an attorney for Jason Jones, Corey Jones's co-defendant, provided documentary evidence (the "Documentary Evidence") purporting to establish that Jason Jones was not present at the scene of the shooting, which occurred in the vicinity of West 165th Street and Ogden Avenue, in The Bronx, New York at a few minutes after midnight on May 24, 2008. The Documentary Evidence purportedly directly contradicts the unequivocal statement of the Government's unidentified eye-witness (the "Witness") to the shooting, who stated—as incorporated in the Criminal Complaint, dated May 29, 2008 (the "Criminal Complaint")—that Corey Jones passed Jason Jones what the Witness believed was a firearm and that Jason Jones then shot Frank Jones (the "Victim"). The Documentary Evidence included: Jason Jones's work records stating that on May 23, 2008, Jason Jones punched out of work at 11:01 p.m.; a log (the "Metro–Card Log") of times and locations where the Metro–Card taken from Jason Jones's person at the time of his arrest (the "Card") was used, which established that the Card was used to board a bus in The Bronx at 11:12 p.m. on May 23, 2008; a record of Jason Jones cashing a check at a Pay–O–Matic check cashing establishment on Gun Hill Road in The Bronx, which included a time-stamped picture of Jason Jones cashing a check at 11:39 p.m. on May 23, 2008, after which Jason Jones asserts that he and three of his co-workers went to have a drink and visit with a friend; after having the drink, Jason Jones asserts, as corroborated by the Metro–Card Log, that he entered the 205th Street subway station in The Bronx, which was nearly four miles away from the scene of the shooting, at 12:30 a.m. on May 24, 2008, which is approximately thirteen minutes after the 911 call regarding the shooting of Frank Jones. Jason Jones further asserts that he took the D train at 12:30 a.m. and exited at the 182nd/183rd Street stop in The Bronx to see his girlfriend. He then claims that, as corroborated by the Metro–Card Log, he entered the 182nd/183rd Street stop at 2:00 a.m. on May 24, 2008. The Government, after reviewing the Documentary Evidence, agreed to consent to a bail package for Jason Jones, and Magistrate Judge Katz approved the bail conditions on October 15, 2008.[2] The Government, by letter dat-

1. For a recitation of the factual background prior to the July 17 Order, see *United States v. Jones,* 566 F.Supp.2d 288 (S.D.N.Y.2008), familiarity with which is presumed.

2. The Government informed the Court by letter dated October 17, 2008 that the Government and Jason Jones agreed to a bail package including (1) a $250,000 unsecured bond;

ed October 14, 2008, informed the Court that it will not consent to a bail package for Corey Jones.

## II. STANDARD FOR REOPENING A PRIOR BAIL DETERMINATION

Pursuant to 18 U.S.C. § 3142(f)(2)(B), a determination of bail conditions may be reopened

> at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

## III. APPLICATION

The Court finds that in the light of the Documentary Evidence, the circumstances concerning Corey Jones's bail application have changed significantly since the Court's July 17 Order. As the Court remarked to the parties at a recent conference, paraphrasing the wisdom of Heraclitus, the river now flowing by is not the same river that passed by yesterday.[3] The Government, however, contends that nothing has changed with respect to Corey Jones. Rather, the Government asserts that the observations of the Witness to Corey Jones can be distinguished from the Witness's observations of Jason Jones. First, the Government argues that the Witness had an opportunity to hear the voice of Corey Jones, who allegedly argued with the Victim prior to allegedly returning with a gun and participating in the shooting. The Government further asserts

that the Witness did not have an opportunity to hear Jason Jones's voice on the night of the shooting. Second, the Government argues that the Witness was able to observe Corey Jones twice on the evening of the shooting because the Witness allegedly observed the initial argument between Corey Jones and the Victim and Corey Jones's alleged return to the area where the shooting took place. The Government concludes that the Witness's identification of Corey Jones thus was based upon greater information than the Witness's identification of Jason Jones, and therefore, the recent developments concerning Jason Jones do not materially affect the circumstances relating to Corey Jones's detention. The Court is not persuaded.

The recent developments concerning Jason Jones materially affect the circumstances relating to Corey Jones's detention. This is not a case in which the Witness testified regarding a stranger. The Criminal Complaint states that the Witness knew both Jason Jones and Corey Jones prior to May 24, 2008. (Criminal Complaint ¶ 6(a)-(b).) In fact, Jason and Corey Jones are brothers, and the Witness referred to them by name. That fact renders it less plausible that the Witness could unequivocally identify Corey Jones by name while being mistaken in identifying Jason Jones, also by name. This prior familiarity substantially weakens the Government's argument that the Witness, by virtue of hearing Corey Jones's voice and observing Corey Jones twice on the night of the shooting, was better situated to observe Corey Jones as opposed to Jason Jones. Further, the Witness clearly and

---

(2) three financially-responsible co-signers to that bond; (3) strict pretrial supervision; and (4) standard travel restrictions and surrender of travel documents. Judge Katz approved these bail conditions, and Jason Jones, after meeting the conditions, was released on bail that same day.

**3.** Heraclitus, *The Oxford Dictionary of Quotations* (Elizabeth Knowles, managing ed. 1999) 371 ("You can't step twice into the same river.")

unequivocally stated that he or she observed "Corey Jones pass Jason Jones a dark colored object, which the Witness believed to be a firearm" and that Jason Jones then shot the Victim. (Criminal Complaint ¶ 6(b)-(c).) Nothing in the record suggests that the Witness's observations, particularly with respect to Jason Jones in relation to Corey Jones, were obscured, or that in observing the shooting the Witness was differently situated with respect to Corey Jones. Accordingly, the recent developments concerning Jason Jones materially affect the circumstances related to Corey Jones's detention.

In the July 17 Order, the Court found that "even if it were to view all of the evidence presented on the record of this proceeding with a most favorable view of [Corey Jones's] assertions, the weight of the evidence would, at most, be balanced evenly between the Government's and [Corey Jones's] positions," and that the "weight of the evidence [did] not overcome the presumption of detention." *Jones,* 566 F.Supp.2d at 295. The Court finds that, after taking recent developments into account, the circumstance regarding the weight of the evidence have sufficiently changed to warrant reconsideration of the July 17 Order. Corey Jones, during the proceedings concerning his bail application, called five[4] witnesses to testify on his behalf: JoAnn McKoy ("McKoy"); Yvette Vergara ("Vergara"); Dennis DiLone ("DiLone"); Kelly Ann Gonzalez ("Gonzalez") (collectively, Vergara, DiLone, and Gonzalez are the "Alibi Witnesses"); and Detective Steven Smith ("Smith") from the NYPD. McKoy was a secondary victim of the shooting, having been shot in the foot and grazed in the neck. She testified that she had known Corey Jones for many years, and that she was approximately six to eight feet from the Victim at the time of the shooting but that Corey Jones was not at the scene of the shooting. McKoy's testimony, as was noted in the July 17 Order, was of limited probative value because it was undermined by other inconsistent statements and/or failures of memory. *See id.* at 293. The Alibi Witnesses testified that, at the time of the shooting, Corey Jones was with them at Vergara's apartment. Although the July 17 Order noted several issues of potential bias and lack of credibility with respect to the Alibi Witnesses as a whole, the Court could not say that Corey Jones's claimed alibi—as established through the Alibi Witnesses—was not credible. *See id.* at 293–94. Whatever weaknesses there may have been in the testimony of these witnesses, unlike the unidentified Witness, they testified in open court, in person and subject to cross-examination.

Finally, although Shakeinne Jones, the Victim's brother, has not testified in any of the proceedings related to this matter, Smith was called to purportedly testify as to exculpatory statements Shakeinne Jones allegedly made concerning Corey Jones. The Court concluded in its July 17 Order that, because of Shakeinne Jones's alleged conflicting accounts of the shooter's identity, the Court afforded little, if any, probative value to Shakeinne Jones's purported exculpatory statement. *See id.* at 294.

The Government, for its evidence, primarily relied on the statement and grand jury testimony of the unidentified Witness. At the time of the July 17 Order, the Court found the Witness's grand jury testimony, which was "based on firsthand observation and knowledge of the circumstances," at least "as persuasive as the testimony presented by McKoy and the

---

4. In addition to these five witnesses, Corey Jones also called Detective Daniel Mullarkey ("Mullarkey") from the New York Police Department (the "NYPD") to testify as to the statement given by the Witness.

Alibi Witnesses." *Id.* at 295. The recent developments concerning Jason Jones, however, have substantially questions concerning the accuracy of the Witness's grand jury testimony.

After reviewing the evidence presented in the proceedings concerning Corey Jones's application and renewed application for bail in its totality, the Court is persuaded that, on balance, the weight of the evidence now overcomes the presumption of detention. The Court finds that, based on the record now before the Court, there are conditions of release that will reasonably assure the appearance of Corey Jones as required and the safety of any other person and the community.

### IV. *ORDER*

Accordingly, it is hereby

**ORDERED** that Corey Jones's renewed application for bail is GRANTED.

**SO ORDERED.**