United States v. Zhang

# In the
# United States Court of Appeals
## For the Second Circuit

---

August Term, 2022
No. 22-1761

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

ZHE ZHANG, AKA ZACK,
*Defendant-Appellant,*

QING MING YU, AKA ALLEN YU, ANTONY ABREU, AKA ANTHONY,
YOU YOU, AKA EDDIE
*Defendants.*

---

On Appeal from the United States District Court for the Eastern
District of New York.

---

ARGUED: SEPTEMBER 21, 2022
DECIDED: DECEMBER 6, 2022

---

Before: RAGGI, WESLEY, and NARDINI, *Circuit Judges.*

---

Defendant-Appellant Zhe Zhang, indicted for participating in a successful murder-for-hire scheme, was ordered detained pending trial. Zhang appeals the district court's decision not to reopen his detention hearing under 18 U.S.C. § 3142(f) after the U.S. Department of Justice confirmed that it would not seek the death penalty against him. We conclude that the district court did not abuse its discretion in declining to revisit its detention ruling. In its initial detention determination, the district court had assumed that the death penalty would not be sought, and so the government's later confirmation of that point did not materially change the detention calculus. Moreover, the district court's consideration of the strength of the evidence that Zhang committed the charged offense, as part of its assessment of whether Zhang posed a danger to the community or a risk of flight, was consistent with the Bail Reform Act and did not undermine the presumption of innocence, which is a trial right. We therefore AFFIRM the district court's decision not to reopen Zhang's detention hearing and DENY Zhang's motion for bail.

------

GABRIEL PARK, Assistant United States Attorney (David C. James, Assistant United States Attorney, *on the brief*), *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee*.

JASON I. SER (Henry E. Mazurek, *on the brief*), Meister Seelig & Fein LLP, New York, NY, *for Defendant-Appellant*.

------

WILLIAM J. NARDINI, *Circuit Judge*:

Defendant-Appellant Zhe Zhang was indicted for participating in a successful murder-for-hire scheme, *see* 18 U.S.C. § 1958(a), and the government sought his detention. After a hearing, the district court determined that Zhang should be detained because he posed a danger to the community as well as a risk of flight, and no set of release conditions would offset those risks. In reaching that conclusion, the court considered a variety of factors, including the government's proffer of strong evidence that Zhang committed the charged capital offense. It assumed, however, that the government would not seek the death penalty. About a month later, the government formally confirmed that it would not do so, and Zhang moved unsuccessfully to reopen his detention hearing.

On appeal, Zhang raises two challenges to the district court's August 3, 2022, denial of his motion to reopen, but neither is persuasive.

3

First, he contends that the court was obliged to reopen his detention hearing under 18 U.S.C. § 3142(f) because the government's formal decision not to seek the death penalty was information that was both new and material to the question of whether he should be released or detained. But the district court made clear that the availability of the death penalty had *not* factored into its original detention decision. Thus, the government's confirmation of the court's assumption would not have materially altered the court's determination that detention was necessary, and so the district court did not abuse its discretion under § 3142(f) in denying the motion to reopen.

Second, Zhang argues that the district court relied too much on the strength of the evidence that he committed the charged offense in deciding not to exercise its inherent powers to reopen the detention hearing, and that its reliance contravened the presumption of innocence. But a district court has broad discretion to determine how

4

much weight to assign the factors listed in § 3142(g) based on the circumstances of a particular case. The presumption of innocence is a trial right, and a district court does not violate that presumption by considering the strength or weakness of the evidence to determine whether pretrial detention is appropriate.

We therefore AFFIRM the district court's decision not to reopen Zhang's detention hearing and DENY Zhang's motion for bail.

## I.    Background

On May 4, 2022, a federal grand jury sitting in the Eastern District of New York returned an indictment charging Zhang and three co-defendants with murder-for-hire and conspiracy to commit murder-for-hire for the 2019 killing of Xin Gu in Flushing, Queens. The government alleges that Gu's former employer, Qing Ming Yu, hired his nephew, You You, to kill Gu when he started a rival real estate company in late 2018. You then allegedly hired Zhe Zhang and Anthony Abreu to help him carry out the murder.

5

The government alleges that in the early hours of February 12, 2019, You, Zhang, and Abreu lay in wait outside a bar in Flushing, where Gu was hosting a Lunar New Year celebration. When Gu left the bar at 2:30 a.m., Abreu shot Gu multiple times and then fled the scene in a car driven by Zhang. Several months later, Yu's company wired $30,000 to a company registered to Zhang.

On May 10, 2022, Zhang was arrested in the Central District of California. On May 12, 2022, he sought pretrial release at a hearing before a magistrate judge in that district (Jacqueline Chooljian, *M.J.*). Zhang proposed a bond of $1.55 million and emphasized his U.S.-based family, his job, and his willingness to accept electronic monitoring. Seeking pretrial detention, the government pointed to, among other things, the seriousness of the charges (carrying a mandatory minimum sentence of life imprisonment upon conviction), Zhang's frequent trips overseas, and the disclosed existence of a cooperating witness. The magistrate judge granted

6

pretrial release subject to home detention and the proposed bond but, recognizing that the U.S. Attorney's Office for the Eastern District of New York was planning to appeal and that Zhang would not be able to finalize the bond paperwork for several days, she stayed the release order until May 18, 2022.

On May 13, 2022, the government appealed the California pretrial release order to the U.S. District Court for the Eastern District of New York (Carol Bagley Amon, *J.*).

On May 19, 2022, the district court heard the government's appeal. The government and Zhang presented largely the same arguments as they had before the magistrate judge, although the government described its evidence against Zhang in more detail. This evidence included cell site location records, telephone toll records, a text message sent from Zhang to a codefendant 20 minutes after the murder, the testimony of multiple witnesses, and financial records showing the payment from Yu to Zhang. In addition, the government

claimed to have significant evidence that Zhang was heavily involved in the illegal sale of marijuana, that he had extensive ties to China, and that certain of the suretors put forward by Zhang for his bond were not, in fact, close social, familial, or professional relations.

The hearing also included a brief discussion of the possibility of capital punishment. The government could not say for certain whether it would seek the death penalty, because the matter was still pending with U.S. Department of Justice in Washington, D.C. But the court noted its understanding that, as matter of policy, "this Justice Department was not pursuing the death penalty in any case," and stated its belief that appointing the additional counsel required for a death penalty case would therefore be "wasting the court's time and taxpayers' money."

Reviewing the magistrate judge's decision *de novo*, the district court ordered Zhang detained because no combination of conditions would reasonably ensure Zhang's appearance in the case and the

safety of the community. The court noted that the charged crime was "extremely serious" and the evidence against Zhang was strong. Additionally, Zhang had substantial ties to China and Taiwan, had previously threatened a witness, and had access to weapons. The court further concluded that the suretors did not alleviate the risk of flight because they provided little "moral suasion" over Zhang given their attenuated connections to him.

Approximately one month after the district court ordered Zhang detained, on June 29, 2022, the government informed the court that the Attorney General had directed the U.S. Attorney's Office for the Eastern District of New York not to seek the death penalty against any of the defendants named in the indictment.

On July 22, 2022, Zhang filed a motion to reopen his detention hearing under 18 U.S.C. § 3142(f). He argued that the government's decision not to seek capital punishment constituted a material change in circumstances that justified reopening the detention decision. That

9

fact, coupled with a newly proposed $5 million bond (secured by properties and co-signors with whom he claimed to have closer relationships), now made pretrial release appropriate.

On July 28, 2022, the district court held a hearing on Zhang's motion to reopen. There, the district court reiterated that its "original ruling did not consider the death penalty" because it had been "of the view that there would be no death penalty authorized in this case." Appellant Br., Ex. G, July 28, 2022, Bail Reopening Hearing Tr. at 4; *see id.* at 7 ("[T]he Court did not take [the potential death penalty] into account at all."). Thus, the district court indicated that it would not reopen the hearing because the fact that the government would not seek the death penalty was not material information unknown at the time of the initial bail hearing. The district court informed the parties that it would issue a written order memorializing its ruling.

On August 3, 2022, the district court issued that written ruling, denying Zhang's motion to reopen his detention hearing and for

10

pretrial release. The district court found that the government's decision not to seek the death penalty was not material information that justified revisiting the court's initial determination, because its "original decision denying bail did not rely in any way on the potential for a capital sentence." *United States v. Zhang*, 22-cr-208-4, Dkt. No. 53, 2 (E.D.N.Y. Aug. 3, 2022).

The court also declined to revisit its prior decision under its inherent powers. *Id.* at 2–3. It observed that a review of the factors outlined in 18 U.S.C. § 3142(g)—the severity of the alleged offense, the strong weight of the evidence against Zhang, Zhang's personal characteristics (including his ties to other countries and past criminal conduct), and the danger posed by Zhang's release—indicated that Zhang was both a flight risk and a danger to the community. *Id.* at 3–8. The court noted that it would have reached this conclusion even if it had given less weight to the evidence against Zhang. *Id.* at 5. The court went on to find that the bond package and release terms

11

proposed by Zhang could not mitigate his risk of flight and danger to the community, particularly in light of the modest incomes of those acting as sureties, the uncertain ownership of the properties to be pledged, and Zhang's prior use of encrypted messaging applications and burner cellphones. *Id.* 8–11.

On August 12, 2022, Zhang filed a notice of interlocutory appeal of the district court's August 3, 2022, Memorandum and Order. On August 29, 2022, Zhang also filed a motion for bail before this Court.

## II. Discussion

In the usual case of a direct appeal from a district court's denial of pretrial release, we "apply deferential review to a district court's bail determination and will not reverse except for clear error." *United States v. Mattis*, 963 F.3d 285, 291 (2d Cir. 2020) (cleaned up). "The clear error standard applies not only to the factual predicates underlying the district court's decision, but also to its overall assessment, based on those predicate facts, as to the risk of flight or

12

danger presented by a defendant's release." *Id.* (cleaned up). The district court's "ultimate finding may be subject to plenary review if it rests on a predicate finding which reflects a misperception of a legal rule applicable to the particular factor involved." *United States v. Shakur*, 817 F.2d 189, 197 (2d Cir. 1987).

Here, however, we are a step removed from the usual case. Zhang did not appeal the district court's original detention determination, which was conveyed orally at the May 19, 2022, hearing. Instead, Zhang appeals only the district court's later decision on August 3, 2022, denying his motion to reopen the detention hearing. That decision is reviewed for abuse of discretion. *See United States v. Gotti*, 794 F.2d 773, 779 (2d Cir. 1986) (reviewing decision not to reopen bail hearing for abuse of discretion). As in other contexts, a "district court has abused its discretion if it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located

13

within the range of permissible decisions." *Warren v. Pataki*, 823 F.3d 125, 137 (2d Cir. 2016) (cleaned up). And so, to the extent that the district court's decision not to reopen was premised on factual findings—including its ultimate assessment of danger and risk of flight—that component of its ruling remains subject to review for clear error.

Zhang's August 29, 2022, motion for bail, filed directly with this Court, does not alter our standard of review. In the normal course, motions for detention or release must be filed in the district court in the first instance. *Cf. United States v. Hochevar*, 214 F.3d 342, 342–44 (2d Cir. 2000) (holding that a motion for bail pending appeal must first be filed before a district court). A court of appeals then sits in review of the district court's decision. *See* Fed. R. App. P. 9(a). Here, the district court ordered Zhang's detention on May 19, 2022, and Zhang did not file a timely notice of appeal from that decision. Instead, it was only after the district court denied his motion to reopen

14

that Zhang filed a notice of appeal. It is therefore only that latter order—denying the motion to reopen—that is properly before us. Put another way, Zhang's direct filing of a motion for bail in this Court cannot serve as an end-run around his decision not to appeal the district court's initial bail decision, and it does not expand the scope of our review on appeal. *See United States v. Watkins*, 940 F.3d 152, 157–58 (2d Cir. 2019) (applying clear error standard to defendant's appeal of denial of bail and to motion for bail filed directly before the Court).

## A. The government's decision not to seek the death penalty

The district court did not abuse its discretion in declining to reopen Zhang's detention hearing under 18 U.S.C. § 3142(f) in light of the Attorney General's decision not to seek the death penalty.

Under the Bail Reform Act, of which § 3142(f) is a part, a court has discretion to reopen a bail hearing if information comes to light that is both new and material to the detention question. Specifically, a hearing "may be reopened" if

15

> the judicial officer finds that information exists that was *not known to the movant at the time of the hearing* and that has a *material bearing* on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f) (emphases added).  Here, the district court concluded that Zhang presented no "material" information to justify reopening the bail hearing because the court had not relied on the possibility of the death penalty in its initial holding.  *See Zhang*, 22-cr-208-4, Dkt. No. 53, 2 (E.D.N.Y. Aug. 3, 2022); Appellant Br., Ex. G, July 28, 2022, Bail Reopening Hearing Tr. at 5:5–8, 47:7–12.

Zhang argues that the district court erred by applying the wrong standards for determining whether the relevant information was "new" and "material."  The Bail Reform Act, he submits, asks whether the new information was "known to the movant at the time of the hearing," 18 U.S.C. § 3142(f), not whether it was known to the court.  Further, he argues that whether the new information has a "material bearing" on the availability of satisfactory release

16

conditions cannot be determined by looking to the district court's original rationale for denying release. Zhang contends that, with these standards correctly applied, the fact that the Attorney General had formally decided not to seek the death penalty was both new and material information, and so the district court erred in declining to reopen his detention hearing.

As an initial matter, we emphasize that the Bail Reform Act states only that a hearing "may" be reopened if new and material information is presented. 18 U.S.C. § 3142(f). The Act therefore leaves the decision to reopen a hearing to the sound discretion of the district court. *Cf. In re Worldcom, Inc.*, 708 F.3d 327, 335-36 (2d Cir. 2013) ("By saying that the district court 'may' grant relief, [a] rule does not require the district court to grant the relief, even if the requirements are met." (cleaned up)). Accordingly, even if Zhang's arguments were otherwise correct, the district court could still decide, in its discretion, not to reopen the detention hearing.

But Zhang's arguments are not correct; rather, they fail on their own terms. Although he is correct that new information under the statute must have been "not known to the movant at the time of the hearing," 18 U.S.C. § 3142(f), that definition does not help his case. As the district court made clear, it declined to reopen the detention hearing because the Attorney General's decision was not material, not because it was not new. *See Zhang*, 22-cr-208-4, Dkt. No. 53, 2 (E.D.N.Y. Aug. 3, 2022) ("Accordingly, the government's decision not to pursue the death penalty does not have a *material* bearing on Zhang's detention." (emphasis added)).

Zhang's argument as to materiality is also unavailing. He contends that because § 3142(f) does not explicitly link the materiality requirement to the court's prior detention order, new information may be material even if the court previously assumed it to be true. To hold otherwise, he suggests, "could incentivize courts to intentionally exclude critical information when making bail determinations to

shield them from later reconsideration." But Zhang does not explain how a court "exclude[s] critical information" from its analysis when it assumes that very same information to be true. And because a party can take a timely appeal from a detention or release decision, the district court's analysis—including information that it found, or merely assumed, to be true—is subject to this Court's review, with the district court's factual findings and assumptions open to appellate scrutiny. Moreover, Zhang's policy argument presumes bad faith by judicial officers and untethers the materiality inquiry from those facts that the court found consequential to its earlier detention decision. A court's prior detention determination is a natural reference point against which to measure the materiality of new information for the purpose of reopening the hearing—that is, revisiting its earlier decision. Doing so, as the district court did here, is fully consistent with 18 U.S.C. § 3142(f).

Finally, Zhang disputes the district court's statement that it did not consider the death penalty in its initial detention decision, but that statement is well supported by the record. During the hearing on May 19, 2022, the district court made clear its understanding that the government would not be pursuing the death penalty. Appellant Br., Ex. D, May 19, 2022, Bail Hearing Tr. at 13 (stating that it was "wasting the Court's time and the taxpayers' money [to be] appointing [death penalty] counsel who will not be necessary"). The district court certainly did not rely on the availability of the death penalty in its initial decision; no mention was made of capital punishment in the district court's oral reasoning for its decision to detain Zhang. To the extent that the district court relied on the possible punishment to which Zhang was exposed, it said only that a conviction would entail a mandatory minimum of life imprisonment. Finally, the district court explicitly stated, in its written ruling denying reopening, that it had not factored the death penalty into its original detention decision.

We will not lightly disregard a district court's characterization of its own analysis, particularly not when, as here, the record fully supports that characterization.

In sum, the district court did not abuse its discretion when it declined to reopen the detention hearing in light of the Department of Justice's confirmation that it would not seek the death penalty.

## B.  The "weight of the evidence" factor

Zhang next argues that the district court, in its analysis of the § 3142(g) factors, relied too heavily on the strength of the evidence that he committed the charged offense when it declined to exercise its inherent power to revisit its detention decision.  Putting significant weight on that evidence, he claims, undermines the presumption of innocence to which a defendant is entitled.  We are unpersuaded.

Beginning with the statute, the Bail Reform Act identifies key considerations for a detention decision.  It states that a court "shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the

21

safety of any other person and the community, take into account the available information concerning": (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

The statute provides additional detail for some of those factors. For example, it lists certain types of crimes that warrant particular consideration under the rubric of the "nature and circumstances of the offense charged." *See* 18 U.S.C. § 3142(g)(1) (instructing courts to consider whether the offense is "a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device"). The statute also provides an illustrative list of factors that relate to a defendant's personal history and characteristics, including "the

person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings."   18 U.S.C. § 3142(g)(3)(A).   Furthermore, subsection (g)(3)(B) tells the court to consider whether the defendant was under court supervision when he was arrested or committed the charged crime.  *See id.* § 3142(g)(3)(B).

Although § 3142(g) of the Bail Reform Act lists various factors to consider, it says nothing about the relative weight a court should give them when deciding whether to release or detain a defendant. *See generally* 18 U.S.C. § 3142(g).  That silence is unsurprising, because the weight given to each factor will inevitably vary from case to case, and might even vary depending on whether the inquiry relates to a defendant's danger or to his risk of flight.  What is more, certain factors might interact with one another in a particular case in a way

that alters a court's analysis of a defendant's danger to the community or flight risk.

The district court's ruling on the motion to reopen demonstrates careful consideration of § 3142(g), the "available information," and its relevance to Zhang's danger to the community if released. Regarding the first factor—the nature and circumstances of the crime—the district court observed that the charged offense was "extremely serious" because it involved a victim's death for payment, "evinc[ing] a calculated disregard for human life." It was entirely appropriate for the court to focus on the fact that the charged offense involved murder, which by its nature involves violence and bespeaks danger to others. Here, where the defendant was charged with murder for which he collected a fee, this factor weighed substantially in favor of a finding of future dangerousness.

The court also properly considered the second factor—the weight of the evidence—in determining that there was "significant

24

evidence" that Zhang had in fact committed the charged murder. The court observed that the government had proffered witness testimony, including that of a cooperating witness, video surveillance, financial records, cell phone records, and texts linking Zhang to the crime, all of which formed a "strong" case against him. In making a predictive assessment of the defendant's future dangerousness if released into the community, common sense and § 3142(g)(2) aligned with the district court's consideration of the strength of this evidence, especially coupled with the nature of the charged offense. It stands to reason that the more strongly the evidence indicated that the defendant committed the murder, the more likely he poses a danger to the community if released on bail.

The district court next considered the third factor—the history and characteristics of the defendant—determining that this, too, weighed in favor of detention. The court appears not to have ascribed much weight to Zhang's criminal history in determining his

dangerousness. But the district court expressed significant concern about social media posts by Zhang threatening a witness in another case, as well as another post in which he displayed "a veritable arsenal of firearms in the trunk of his car." *Zhang*, 22-cr-208-4, Dkt. No. 53, 6 (E.D.N.Y. Aug. 3, 2022). These instances of past conduct strongly indicated a history and characteristics posing a danger to the community if released, which was highly relevant to a finding of dangerousness.

Finally, the charged offense and Zhang's social media posts also supported a finding of dangerousness in light of the fourth factor—the nature and seriousness of the danger to any person or the community. 18 U.S.C. § 3142(g)(4). Although this factor is closely tied to the ultimate inquiry, the district court reasonably concluded that the charged crime and past conduct surely indicated that Zhang presented a serious danger to the community, particularly with regard to his potential threatening conduct towards witnesses.

Far from manifesting error, the court's reasoning demonstrates the flexible, fact-intensive nature of a detention decision. The court called on case-specific information to assess each factor's relevance, and reasonably found that, individually and as a whole, the factors pointed towards the need to detain the defendant to avoid danger to the community.

The district court conducted a similarly probing analysis of the § 3142(g) factors as to Zhang's flight risk. Regarding the nature and circumstances of the offense charged, the district court observed that Congress has set a mandatory minimum of life in prison for murder-for-hire, which creates an "extraordinary" risk of flight, particularly for a 34-year-old defendant such as Zhang. The prospect of a severe sentence can create a strong incentive for a defendant to flee and thereby avoid that sentence. *See United States v. Sabhnani*, 493 F.3d 63, 76 (2d Cir. 2007).

The weight of the evidence against Zhang functioned likewise. Observing the strong evidence against Zhang, the district court noted that "an increased probability of conviction increases his risk of flight." *Zhang*, 22-cr-208-4, Dkt. No. 53, 5. Where, as here, the evidence against a defendant is strong, it follows that the defendant faces an elevated risk of conviction (and of the attendant punishment), and therefore may present an elevated risk of flight.

The district court also thoroughly considered the history and characteristics of the defendant, concluding that they supported a finding that he was a flight risk. The court observed that Zhang's close family ties with China and Taiwan provided him with an incentive and avenue to flee the potential life sentence he faces. The court further considered Zhang's history of marijuana distribution, primarily as it provided him with an alternative source of income to flee, even if the government froze his other assets. The history and characteristics of a defendant may affect a court's risk-of-flight-

28

analysis by demonstrating a defendant's incentives, ability, or probability of flight (or lack thereof).

Having found that Zhang presented a danger to the community and risk of flight if released, the district court considered "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g). The court found that there were not. Although the proposed bond package was $5 million, it was "backed by only $1.4 million in real property," and the signatures of nine sureties, "most of whom have modest incomes." *Zhang*, 22-cr-208-4, Dkt. No. 53, 8–9. This package held insufficient "moral suasion" over Zhang, particularly considering his "substantial incentive and ability to flee a potential life sentence." *Id.* at 10. The district court also found the other proposed conditions insufficient to prevent flight and protect witnesses and the community. In the context of this case, Zhang's agreement to waive extradition,

proposed monitoring of his cellphone, and proposed electronic monitoring and home detention were also insufficient to allay the risks. *See id.* at 10–11 (discussing the "empty gesture" of extradition waivers, Zhang's past use of encrypted messages, and his ability, upon deciding to flee, to remove any electronic monitoring).

In short, the district court engaged in precisely the sort of case-specific approach that this Court has endorsed. *See, e.g., Mattis*, 963 F.3d at 295–96 (affirming district court's grant of pretrial release, despite "strong" evidence of guilt, on account of the defendants' personal characteristics and a bond condition determined to sufficiently deter flight); *United States v. English*, 629 F.3d 311, 317, 322 (2d Cir. 2011) (affirming the district court's denial of pretrial release where the evidence against the defendant was "incredibly strong" and evidence "is one of the most important factors to consider").

Zhang counters that putting significant weight on the evidence that he committed the charged offense undercuts the presumption of

innocence owed to criminal defendants. He is mistaken. The presumption of innocence "is a doctrine that allocates the burden of proof in criminal trials; . . . it has no application to a determination of the rights of a pretrial detainee." *Bell v. Wolfish*, 441 U.S. 520, 533 (1979). That is because pretrial detention is regulatory in nature, *United States v. Salerno*, 481 U.S. 739, 747–48 (1987), and is assessed not to preemptively punish a defendant, but only to reasonably assure the safety of the community and the appearance of the defendant at court proceedings. 18 U.S.C. § 3142(g). *See also United States v. Kostadinov*, 721 F.2d 411, 413 (2d Cir. 1983) ("[W]e find no merit in the appellant's contention that consideration of the weight of the evidence [in bail determinations] contradicts the presumption of innocence in criminal cases.").

Section 3142(j) of the Bail Reform Act does not alter this conclusion. Section 3142(j) states: "Nothing in this section shall be construed as modifying or limiting the presumption of innocence."

Contrary to Zhang's argument, this does not mean that the presumption of innocence limits a district court's ability to engage in factfinding as to pretrial detention. Instead, it must be read only to emphasize that the outcome of pretrial detention hearings can have no bearing on the presumptions owed to a defendant in the ultimate determination of guilt at trial.[1] *See Salerno*, 481 U.S. at 755 (rejecting the argument that the Bail Reform Act unconstitutionally undermined the presumption of innocence).

Our conclusion is unchanged by courts that have found otherwise. Most notably, the Ninth Circuit has suggested that "the weight of the evidence is the least important of the various [§ 3142(g)] factors," lest a court make a "pretrial determination that the person is guilty." *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

---

[1] In fact, courts often undertake the difficult task of making pretrial factual determinations, including preliminary assessments of the evidence against a defendant, without undermining a defendant's presumption of innocence at trial. *See, e.g., United States v. Geaney*, 417 F.2d 1116, 1118–21 (2d Cir. 1969) (holding that trial court must make pretrial findings by a preponderance of the evidence on the existence of a conspiracy in order to determine whether the co-conspirator exception to the hearsay rule applies).

We agree, of course, that in deciding whether to release or detain a defendant before trial, it is not the district court's role to definitively conclude whether the defendant is guilty. But as we have explained, a preliminary assessment of the strength or the weakness of the evidence can be a key consideration in whether the defendant is dangerous or poses a flight risk, and such a finding does not in fact impinge upon the presumption of innocence. Moreover, § 3142(g) itself does not suggest any hierarchy among the various factors to be considered by a court in a detention hearing.[2] *See Kostadinov*, 721 F.2d at 413.

---

[2] Our conclusion is unaltered by the district court opinions in this Circuit that cite *Motamedi*, 767 F.2d at 474, or each other, for the proposition that the weight of the evidence is the least important factor. *See, e.g., United States v. Boustani*, 356 F. Supp. 3d 246, 253 (E.D.N.Y. 2019); *United States v. Paulino*, 335 F. Supp. 3d 600, 613 (S.D.N.Y. 2018); *United States v. Jones*, 566 F. Supp. 2d 288, 292 (S.D.N.Y. 2008); *United States v. Watkins*, 21-cr-50, 2022 WL 1497961, at *2 (W.D.N.Y. May 12, 2022); *United States v. Fox*, 22-cr-53, 2022 WL 1420780, at *5 (W.D.N.Y. May 5, 2022); *United States v. Budd*, 20-cr-06101, 2020 WL 5951335, at *3 (W.D.N.Y. Oct. 8, 2020); *United States v. Williams*, 20-cr-293-2, 2020 WL 4719982, at *3 (E.D.N.Y. Aug. 13, 2020); *United States v. Angwang*, 20-mj-0837, 2020 WL 5947187, at *3 (E.D.N.Y. Oct. 7, 2020). By and large, these cases still consider the weight of the evidence in the context of the case before them, and do not, in substance, indicate a practice of finding the weight of the evidence to be universally less important than other

## III. Conclusion

In summary: We hold that the district court did not abuse its discretion in declining to reopen Zhang's detention hearing.

(1) The government's official decision not to pursue the death penalty—made after the district court ordered Zhang detained—did not constitute material information that warranted reopening the detention hearing under 18 U.S.C. § 3142(f) because the district court had already assumed in its initial detention determination that capital punishment would not be sought.

(2) The district court was free to determine the appropriate weight for each of the U.S.C. § 3142(g) factors, including the strength of the evidence that the defendant committed the

---

factors. *See, e.g., Boustani*, 356 F. Supp. 3d at 253 (clarifying that despite caution to afford undue weight to evidence against defendant, "significant evidence, including extensive documentation, of a defendant's role in a crime may weigh against release"). To the extent those cases could be read to suggest that the weight of the evidence is a generally less important factor in a detention decision, they are unpersuasive for the reasons explained in this opinion.

charged offense, based on the circumstances of the case. Its consideration of the strength of the evidence did not contravene the presumption of innocence to which the defendant was entitled at trial.

We therefore AFFIRM the district court's challenged August 3, 2022, order, and we DENY Zhang's motion for bail.