18-3076-cr
*United States v. Watkins*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2018

No. 18-3076-cr

UNITED STATES OF AMERICA,
*Appellee,*

v.

LARRY WATKINS, SR.,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of New York

SUBMITTED: JANUARY 29, 2019
DECIDED: OCTOBER 3, 2019

Before: CABRANES, WESLEY, and LIVINGSTON, *Circuit Judges*.

Defendant-Appellant Larry Watkins, Sr. ("Watkins") was charged in a one-count indictment with possession of ammunition as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On July 19, 2018, Magistrate Judge Michael J. Roemer entered a detention order, which the United States District Court for the Western District of New York (Lawrence J. Vilardo, *Judge*) affirmed in an October 9 Decision and Order ("October 9 Order"). On October 18, Watkins appealed the District Court's October 9 Order, and on December 26, he filed a motion for bail before us. On January 30, 2019, we entered an order denying Watkins's bail motion and affirming the District Court's October 9 Order. This opinion sets forth our reasoning.

The central issue on appeal is whether the Government was entitled to a detention hearing under 18 U.S.C. §§ 3142(f)(1)(A) or 3142(f)(1)(E) of the Bail Reform Act. We conclude that it was. In so doing, we reject Watkins's vagueness challenge to the residual clause in the Bail Reform Act's definition of "crime of violence." We further conclude that possession of ammunition by a convicted felon is categorically a crime of violence under the residual clause, and therefore satisfies § 3142(f)(1)(A). Finally, pursuant to a conduct-specific inquiry, we conclude that Watkins's offense also involved the possession or use of a firearm under § 3142(f)(1)(E) because Watkins discharged the ammunition from a firearm. Accordingly, on January 30, 2019 we **AFFIRMED** the District Court's October 9 Order and **DENIED** Watkins's motion for bail.

Monica J. Richards, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, NY, *for Appellee*.

Alan S. Hoffman, Buffalo, NY, *for Defendant-Appellant*.

JOSÉ A. CABRANES, *Circuit Judge*:

Defendant-Appellant Larry Watkins, Sr. ("Watkins") was charged in a one-count indictment with possession of ammunition as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On July 19, 2018, Magistrate Judge Michael J. Roemer entered a detention order, which the United States District Court for the Western District of New York (Lawrence J. Vilardo, *Judge*) affirmed in an October 9 Decision and Order ("October 9 Order"). On October 18, Watkins appealed the District Court's October 9 Order, and on December 26, Watkins filed a motion for bail before us. On January 30, 2019, we entered an order denying Watkins's bail motion and affirming the District Court's October 9 Order. This opinion sets forth our reasoning.

The central issue on appeal is whether the Government was entitled to a detention hearing under 18 U.S.C. §§ 3142(f)(1)(A) and

3

3142(f)(1)(E) of the Bail Reform Act. We conclude that it was. In so doing, we reject Watkins's vagueness challenge to the residual clause in the Bail Reform Act's definition of "crime of violence." We further conclude that possession of ammunition by a convicted felon is categorically a crime of violence under the residual clause, and therefore satisfies § 3142(f)(1)(A). Finally, pursuant to a conduct-specific inquiry, we conclude that Watkins's offense also involved the possession or use of a firearm under § 3142(f)(1)(E) because Watkins discharged the ammunition from a firearm. Accordingly, we **AFFIRMED** the District Court's October 9 Order and **DENIED** Watkins's motion for bail.

## I. BACKGROUND[1]

On June 16, 2018, Watkins fired nine bullets at a fleeing vehicle on a residential street in broad daylight. Watkins had only recently been discharged from federal supervised release after serving a ten-year sentence for a drug conspiracy conviction. Watkins claims to have been standing on his front lawn when he observed the vehicle's occupants target his son in a drive-by shooting. To protect his son, Watkins immediately chased the vehicle into the street and began firing.

Watkins fled the scene after the shooting and deposited the illegally possessed handgun at a relative's home. He later returned

---

[1] These facts are drawn from the record before the District Court, including transcripts of hearings before the Magistrate Judge and the District Judge. They are not disputed for these purposes.

and spoke with investigators from the Buffalo Police Department. Watkins did not immediately admit his involvement in the shooting.

Days later, Watkins was arrested and interviewed by agents from the Federal Bureau of Investigation ("FBI"). Determined to recover the missing firearm, the FBI agents promised Watkins that they would not seek to have him charged with possession of the firearm if he revealed its location. Watkins eventually led the FBI agents to his relative's home, where they recovered a fully-loaded, semi-automatic pistol.

On June 21, 2018, Watkins was charged in a one-count indictment for possession of ammunition as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). At his arraignment, the Government moved to detain Watkins without bail pending trial.

During a July 2 detention hearing, the Magistrate Judge made the unusual decision to order briefing from both parties on the threshold question of whether the Government was entitled to a detention hearing under § 3142(f)(1). Pursuant to § 3142(f)(1), a judicial officer must hold a detention hearing upon motion of the Government "in a case that involves":

> (A) a crime of violence . . . ;
>
> (B) an offense for which the maximum sentence is life imprisonment or death;
>
> (C) an offense for which a maximum term of imprisonment of ten years or more is

prescribed in the Controlled Substances Act . . . ;

(D) any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph . . . ; or

(E) any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device . . . .[2]

The term "crime of violence" is defined, in relevant part, as:

(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; [or]

(B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.[3]

---

[2] 18 U.S.C. § 3142(f)(1)(A)–(E).

[3] *Id.* § 3156(a)(4)(A)–(B).

6

The first clause ("A") is commonly referred to as the "elements" clause, while the second ("B") is referred to as the "residual" clause.[4]

The Government proffered two theories in support of its right to a detention hearing under § 3142(f)(1). First, despite effectively conceding that possession of ammunition is not itself a "crime of violence," the Government emphasized that Watkins's charged offense—felon-in-possession of ammunition—stemmed from a shooting, which is indisputably a "crime of violence." Therefore, the government argued, Watkins's charged offense bears a significant factual nexus to a crime of violence and is thus a case that "involves" a "crime of violence" under § 3142(f)(1)(A). In other words, according to the Government, the prefatory language of § 3142(f)(1)—which provides for a detention hearing "in a case that *involves*" certain types of offense—means that the charged offense need not itself be a "crime of violence," so long as it bears a significant factual nexus to a crime of violence. Second, the Government argued that Watkins's

---

[4] *See United States v. Davis*, 139 S. Ct. 2319, 2324 (2019). These clauses have sometimes been referred to by our Court as the "force" clause and "risk-of-force" clause. *See, e.g.*, *United States v. Hill*, 890 F.3d 51, 54 (2d Cir. 2018). For purposes of this opinion, we adhere to the Supreme Court's naming conventions. Only the "residual clause" is relevant to this case because possession of ammunition as a convicted felon does not have as an element the use, attempted use, or threatened use of physical force against the person or property of another.

charged offense qualifies under § 3142(f)(1)(E) because the underlying conduct "involve[d] the possession or use of a firearm."[5]

Watkins, in turn, disagreed with the Government's interpretation of the phrase "in a case that involves." Rather, he maintained that § 3142(f)(1)(A) requires that the charged offense itself constitute a crime of violence. Similarly, he argued that § 3142(f)(1)(E) requires that the charged offense have, as an element, the use or possession of a firearm. Finally, relying on the Supreme Court's decisions in *Johnson v. United States*[6] and *Sessions v. Dimaya*,[7] Watkins argued that the residual clause in the Bail Reform Act's definition of "crime of violence" is unconstitutionally vague.[8]

At the continued hearing on July 16, 2018, Magistrate Judge Roemer found that the Government was entitled to a detention hearing under both § 3142(f)(1)(A) and § 3142(f)(1)(E), and that it had established by clear and convincing evidence that no condition or

---

[5] 18 U.S.C. § 3142(f)(1)(E).

[6] 135 S. Ct. 2551 (2015) (holding the residual clause in the definition of "violent felony" in the Armed Career Criminal Act ("ACCA") unconstitutionally vague).

[7] 138 S. Ct. 1204 (2018) (holding the residual clause of the federal criminal code's definition of "crime of violence," as incorporated into the Immigration and Nationality Act's definition of "aggravated felony," unconstitutionally vague).

[8] At the time Watkins filed his brief, the Supreme Court had yet to decide *United States v. Davis*, 139 S. Ct. 2319 (2019), which addresses the constitutionality of the residual clause in 18 U.S.C. § 924(c)(3)(B).

combination of conditions could reasonably assure the safety of any other person and the community were Watkins to be released. Magistrate Judge Roemer thereupon immediately remanded Watkins to the custody of the United States Marshals Service and entered a detention order on July 19, 2018.

On August 28, 2018, Watkins filed a motion for reconsideration of Magistrate Judge Roemer's July 19 detention order, which the District Court construed as a motion for revocation of the July 19 detention order.[9] In the October 9 Order, Judge Vilardo upheld the July 19 detention order for three reasons. First, relying on our decision in *United States v. Dillard*,[10] he concluded that possession of ammunition is categorically a "crime of violence" under the § 3156(a)(4)(B) residual clause, as incorporated in § 3142(f)(1)(A). Second, Judge Vilardo appeared to agree with the Government that Watkins's case "involved" a crime of violence under § 3142(f)(1)(A) because the charged offense bore a significant factual nexus to a crime of violence. Third, he concluded that Watkins's charged offense "involve[d] the possession or use of a firearm" under § 3142(f)(1)(E) because "the ammunition alleged to have been possessed was also alleged to have been actually fired from a

---

[9] *See* 18 U.S.C. § 3145(b) ("If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order.").

[10] 214 F.3d 88 (2d Cir. 2000) (concluding that the offense of possession of a firearm as a convicted felon is a "crime of violence" under § 3142(f)(1)(A)).

9

firearm."[11] Finally, Judge Vilardo rejected Watkins's argument that the residual clause in the Bail Reform Act's definition of "crime of violence" is unconstitutionally vague.

 On October 18, 2018, Watkins appealed the District Court's October 9 Order. He subsequently filed a motion for bail on December 26, 2018. On appeal, Watkins maintains that the Government was not entitled to a detention hearing under either § 3142(f)(1)(A) or § 3142(f)(1)(E). He further contends that the Bail Reform Act's residual clause is unconstitutionally vague.[12]

On January 30, 2019, we entered an order denying Watkins's motion for bail, "with an opinion forthcoming."[13] This opinion sets forth the reasoning for our conclusion that the Government was entitled to a detention hearing under both § 3142(f)(1)(A) and § 3142(f)(1)(E).

## II. DISCUSSION

### A. Standards of Review

Generally, "we apply deferential review to a district court's order of detention and will not reverse except for clear error, *i.e.*,

---

[11] JA 189.

[12] Since appealing the District Court's October 9 Order, Watkins has pleaded guilty to being a convicted felon in possession of ammunition.

[13] 2d Cir. Dkt. No. 38.

unless on the entire evidence we are left with the definite and firm conviction that a mistake has been committed."[14] We review *de novo* questions of law.[15]

## B. The Bail Reform Act

The Bail Reform Act allows federal courts to detain an arrestee pending trial if, during an adversary hearing, the Government demonstrates by clear and convincing evidence that no release conditions "will reasonably assure . . . the safety of any other person and the community."[16] First, however, the Government must establish by a preponderance of the evidence that it is entitled to a detention hearing.[17]

Pursuant to § 3142(f), the Government is entitled to a pretrial detention hearing if: (1) the charged offense falls within any of the five subcategories set forth in § 3142(f)(1)(A)–(E); (2) the defendant poses a serious risk of flight;[18] or (3) there is a serious risk that the defendant will attempt to obstruct justice, or threaten, injure, or

---

[14] *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (internal quotation marks omitted).

[15] *United States v. Abuhamra*, 389 F.3d 309, 317 (2d Cir. 2004).

[16] 18 U.S.C. § 3142(e)(1), (f)(2)(B).

[17] *See United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988).

[18] 18 U.S.C. § 3142(f)(2)(A).

intimidate a witness or juror.[19] Section 3142(f)(1) thus performs a gate-keeping function by "limit[ing] the circumstances under which [pretrial] detention may be sought to the most serious of crimes."[20]

Once the Government has demonstrated to the District Court that it is entitled to seek pretrial detention under § 3142(f), a judicial officer must promptly hold a hearing. At this hearing, the parties may "present information by proffer or otherwise," since the "rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."[21] The defendant has the right to be represented by counsel, and can testify on his own behalf, present witnesses, and cross-examine witnesses who appear at the hearing.[22]

In deciding whether to detain an arrestee, the judicial officer "is not given unbridled discretion."[23] Rather, Congress has specified certain factors the judicial officer must consider, including the nature and circumstances of the charges; the substantiality of the Government's evidence; the arrestee's background; and the nature and seriousness of the danger to any person or the community that

---

[19] *Id.* § 3142(f)(2)(B).

[20] *United States v. Salerno*, 481 U.S. 739, 747 (1987).

[21] 18 U.S.C. § 3142(f)(2).

[22] *Id.*

[23] *Salerno*, 481 U.S. at 742.

the arrestee's release would pose.[24] Ultimately, it is the Government's burden to prove to the judicial officer by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the safety of any other person and the community."[25]

Here, the Government did not allege that Watkins presents a serious risk of flight or obstruction. Accordingly, in order to be entitled to a detention hearing, the Government had to establish that Watkins's offense falls within one of the five subsections set forth in § 3142(f)(1). Both parties agree that only subsections (A) and (E) are potentially relevant to Watkins's circumstances. Those subsections entitle the Government to a detention hearing in a case that involves "a crime of violence" (as defined in § 3156(a)(4)) or "any felony that . . . involves the possession or use of a firearm,"[26] respectively.

## C. Void-for-Vagueness

Before we consider whether possession of ammunition constitutes a "crime of violence" under § 3142(f)(1)(A), we must address the threshold issue of whether its residual clause is

---

[24] 18 U.S.C. § 3142(g).

[25] *Id.* § 3142(f)

[26] *Id.* § 3142(f)(1)(A), (E).

13

unconstitutionally vague under the Fifth Amendment's Due Process Clause.[27]

The Supreme Court has instructed that "the degree of vagueness that the Constitution allows depends in part on the nature of the enactment."[28] Generally, we are to express "greater tolerance" for vagueness in statutes that impose civil, rather than criminal, penalties "because the consequences of imprecision are qualitatively less severe."[29] To date, the Supreme Court, in a trilogy of cases,[30] has

---

[27] The Fifth Amendment provides, in relevant part: "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. V.

[28] *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (internal brackets and quotation marks omitted).

[29] *Id.* (internal quotation marks omitted).

[30] *See Johnson v. United States*, 135 S. Ct. 2551 (2015) (holding unconstitutional the residual clause in the Armed Career Criminal Act, which imposes a more severe punishment on a defendant convicted of being a felon-in-possession of a firearm if he has three or more prior convictions for a "violent felony"); *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) (invalidating the residual clause cross-referenced in the Immigration and Nationality Act ("INA"), which renders deportable any alien convicted of an "aggravated felony" after admission and further renders such individuals ineligible for cancellation of removal, a form of discretionary relief allowing some deportable aliens to remain in the country); *United States v. Davis*, 139 S. Ct. 2319 (2019) (invalidating the residual clause in § 924(c), which provides mandatory minimum sentences for using, carrying, or possessing a firearm in connection with any federal "crime of violence"). We note that even though the INA does not impose criminal penalties, the plurality opinion in *Dimaya* subjected the INA's residual clause to the "most exacting vagueness standard" because it likened the consequence of near-certain deportation to carceral punishment. *See Dimaya*, 138 S. Ct. at 1213 (observing that deportation is "a particularly severe

invalidated residual clauses appearing in statutes that either: (1) establish new criminal offenses; or (2) impose severe or enhanced penalties.

By contrast, in *Beckles v. United States*,[31] the Supreme Court held that the now-defunct[32] residual clause in the "career offender" enhancement of the United States Sentencing Guidelines[33] ("Guidelines") was immune from a void-for-vagueness challenge. Recognizing that it had by then (2017) invalidated only two kinds of criminal laws as "void for vagueness"—"laws that *define* criminal offenses and laws that *fix the permissible sentences* for criminal

---

penalty . . . which may be of greater concern to a convicted alien than any potential jail sentence" and observing that "as federal immigration law increasingly hinged deportation orders on prior convictions, removal proceedings became ever more intimately related to the criminal process" (internal quotation marks omitted)).

[31] 137 S. Ct. 886 (2017).

[32] Section 4B1.2(a)(2) of the Guidelines was amended in November 2016 to remove the residual clause. U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 4B1.2(a)(2) (Nov. 2016).

[33] *See* U.S.S.G. § 4B1.1(a) (Nov. 2006) ("A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."); *id.* § 4B1.2(a)(2) (defining the term "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another").

offenses"[34]—the Supreme Court reasoned that the advisory Guidelines fall within neither category. In other words, the Guidelines do not fix the permissible range of sentences or establish new criminal offenses; rather, they "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range."[35] As such, the Guidelines do not implicate the twin concerns underlying the vagueness doctrine—"providing notice and preventing arbitrary enforcement."[36] Indeed, no amount of notice can change the fact that the Guidelines are merely advisory, and "the sentencing court retains discretion to impose [an] enhanced sentence" even if a defendant conforms his behavior to avoid the career offender enhancement.[37] Accordingly, the Supreme Court concluded that the Guidelines are not amenable to a vagueness challenge.[38]

Like the Guidelines, the Bail Reform Act does not define criminal offenses or impose mandatory penalties. Rather, as explained above, § 3142(f)(1) merely performs a gate-keeping function by narrowing the types of offenses that render an arrestee eligible for a detention hearing. A determination that an arrestee's

---

[34] *Beckles*, 137 S. Ct. at 892 (emphasis in original).

[35] *Id.*

[36] *Id.* at 894.

[37] *Id.*

[38] *Id.*

offense constitutes a "crime of violence" under § 3142(f)(1) is a necessary, but not sufficient, condition to provide a basis for pretrial detention.[39] Moreover, even if the arrestee's offense qualifies under § 3142(f)(1), a judicial officer must still conduct a "full-blown adversary hearing,"[40] where the arrestee is represented by counsel and has the right to present and cross-examine witnesses. It is only after this hearing, and only if the Government has established by clear and convincing evidence that no condition or combination of conditions can reasonably assure the safety of any other person or the community, that a judicial officer can enter a detention order.[41] In sum, it is never a foregone conclusion that an arrestee subject to a detention hearing under § 3142(f)(1) will be detained before trial.

Additionally, like the Guidelines, § 3142(f)(1) of the Bail Reform Act does not implicate the dual concerns underlying the void-for-vagueness doctrine: fair notice and preventing arbitrary enforcement. "[T]he purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct to the law."[42] In other words, it would be unfair to punish someone if he could not know that his conduct was proscribed or the possible range

---

[39] S. Rep. No. 98-225, at21 (1983) ("[T]he fact that the defendant is charged with an offense described in subsection (f)(1) . . . is not, in itself, sufficient to support a detention order.").

[40] *Salerno*, 481 U.S. at 750.

[41] 18 U.S.C. § 3142(f)(2) and (e).

[42] *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999).

of punishment to which he would be exposed. Section 3142(f)(1) does not, however, proscribe conduct or set punishment. Indeed, as the Supreme Court explained in *United States v. Salerno*,[43] pretrial detention does not constitute "punishment" at all.[44] Rather, pretrial detention is "regulatory in nature" because it serves a "pressing societal problem" of preventing danger to the community.[45] Thus, the "distinct character"[46] of non-punitive pretrial detention does not trigger the same constitutional concerns as the indisputably punitive post-conviction sentence. Moreover, as a practical matter, we cannot imagine that an individual conforms his conduct in order to avoid pretrial detention rather than, say, post-conviction incarceration.

Finally, the Bail Reform Act does not invite arbitrary enforcement within the meaning of the Supreme Court's case law because it does not leave the judicial officer "free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case," nor does it permit a judicial officer "to prescribe the sentences or sentencing range available."[47] The Act

---

[43] 481 U.S. 739 (1987).

[44] *Id.* at 746–48.

[45] *Id.* at 747.

[46] *Mont v. United States*, 139 S. Ct. 1826, 1842 (2019) (Sotomayor, J., dissenting).

[47] *Beckles*, 137 S. Ct. at 894–95 (internal quotation marks omitted).

merely empowers the court to hold a hearing that is itself guided by the statutory requirements established in § 3142(g).

In sum, because § 3142(f)(1) does not define criminal offenses, fix penalties, or implicate the dual concerns underlying the void-for-vagueness doctrine, it is not amenable to a due process challenge and is therefore not unconstitutionally vague.[48]

### D. Section 3142(f)(1)(A) (Bail Reform Act)

Having concluded that the residual clause of § 3142(f)(1)(A) of the Bail Reform Act is not unconstitutionally vague, we must now address how to interpret this residual clause.

There are generally two approaches for analyzing whether an individual's conduct falls within the ambit of a statute's residual clause. The first approach, the "categorical approach," has generally been used in prior-conviction cases, where the statute at issue

---

[48] Although the Bail Reform Act's residual clause is not subject to a vagueness challenge, it is worth noting that Watkins's conduct, taken as a whole, would certainly have put him on notice that he was at risk of submitting himself to a detention hearing. *See Maynard v. Cartwright*, 486 U.S. 356, 361 (1988) ("Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk."). Watkins cannot seriously dispute that shooting ammunition from a firearm at a moving vehicle, on a residential street in broad daylight, involves a substantial risk that physical force against the person or property of another may be used.

imposes certain penalties based on a defendant's *prior* conviction.[49] Under the categorical approach, courts must decide whether, in the "ordinary case," the conduct encompassed by the elements of the offense presents a substantial risk that physical force against the person or property of another may be used.[50] By focusing on the riskiness of an "idealized ordinary case of the crime"[51] and not the actual conduct underlying a defendant's prior conviction, the categorical approach avoids any Sixth Amendment concerns about having judges decide facts that increase the penalty for a crime beyond the prescribed statutory maximum. [52]

---

[49] *See Davis*, 139 S. Ct. at 2343–44 (Kavanaugh, J., dissenting) (explaining the application of the categorical approach in the prior-conviction context).

[50] *Dimaya*, 138 S. Ct. at 1211 (quoting *James v. United States*, 550 U.S. 192, 208 (2007)); *see also Johnson*, 135 S. Ct. at 2557 ("Deciding whether the residual clause covers a crime thus requires a court to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury." (quoting *James*, 550 U.S. at 208)).

[51] *Johnson*, 135 S. Ct. at 2557–58.

[52] *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *see also Dimaya*, 138 S. Ct. at 1256 (Thomas, J., dissenting) ("[T]he categorical approach was never really about the best reading of the text. . . . [T]his Court adopted that approach to avoid a potential Sixth Amendment problem with sentencing judges conducting minitrials to determine a defendant's past conduct."); *see also Davis*, 139 S. Ct. at 2344 (Kavanaugh, J., dissenting) ("[I]n the prior-conviction cases, the Court insisted on the categorical approach to avoid Sixth Amendment concerns." (internal quotation marks omitted)); *United States v. Barrett*, 903 F.3d 166, 179 (2d Cir. 2018) ("[C]onstitutional avoidance informed the original

Of course, this Sixth Amendment concern applies only to prior-conviction cases, where penalties may be enhanced based on factual findings regarding a *past* conviction. By contrast, in cases where the residual clause appears in a statute criminalizing current-offense conduct, there is no such Sixth Amendment problem. These "current-offense" statutes operate entirely in the present and do not require examination of past conduct underlying a prior conviction. They include, for example, 18 U.S.C. § 924(c), which makes it a separate crime to use or carry a firearm during and in relation to a predicate crime of violence. If a defendant is charged under § 924(c) and goes to trial, the jury can decide whether the defendant's predicate offense conduct involved a substantial risk that physical force against the person or property of another would be used in the course of committing the predicate offense.[53] Thus, prior to *Davis*, courts would apply this "case-specific" or "conduct-specific" approach to current-offense statutes to determine whether a predicate offense qualifies as a crime of violence under the residual clause.

As a result of *Davis*, however, it appears that courts may no longer avail themselves of this "conduct-specific" approach in cases such as this, where the statute focuses only on present offense

---

categorical-approach mandate."), *abrogated in part by United States v. Davis*, 139 S. Ct. 2319 (2019).

[53] Alternatively, if a defendant pleads guilty, he can proffer in his plea agreement to the nature and attendant riskiness of the predicate offense.

conduct, not prior conduct. This is so because *Davis* interpreted the statutory text of the § 924(c)(3)(B) residual clause—which is identically worded to the Bail Reform Act's residual clause—as precluding a case-specific approach.[54]

Accordingly, even though § 3142(f)(1) of the Bail Reform Act is not a prior-conviction statute, and even though it would make abundant sense to allow courts to consider an arrestee's actual conduct during the charged crime for purposes of pretrial detention, we are bound by the Supreme Court's broad reasoning in *Davis*. Accordingly, we must apply the categorical approach to determine whether possession of ammunition by a convicted felon constitutes a "crime of violence" for purposes of § 3142(f)(1)(A). We conclude that it does.

It has long been the law of our Circuit that possession of a firearm is unequivocally a crime of violence for purposes of § 3142(f)(1)(A).[55] Our Court's reasoning in arriving at this conclusion

---

[54] *See Davis*, 139 S. Ct. at 2327–29.

[55] *See United States v. Dillard*, 214 F.3d 88, 97 (2d Cir. 2000) ("[T]he crime of felon-in-possession under section 922(g)(1) falls within section 3156(a)(4)(B); 'by its nature,' the offense of illegal gun possession by a person previously convicted of a felony offense (not including business-regulating offenses), 'involves a substantial risk that physical force . . . may be used in the course of committing the offense.'"). We recognize that § 3142(f)(1) of the Bail Reform Act was amended in 2006 to include subsection (E), which adds to the list of hearing-eligible offenses "any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device . . . or any other dangerous weapon . . . ." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 216, 120 Stat. 587, 617 (codified at 18 U.S.C. § 3142(f)(1)(E)). This

applies with equal force to the crime of possession of ammunition by a convicted felon.[56] Like possession of a firearm, possession of ammunition "gives rise to *some* risk" that the ammunition may be used in an act of violence.[57] Under the "categorical approach," we are required to "imagine how the idealized ordinary case of the crime subsequently plays out." *Johnson*, 135 S. Ct. at 2557–58. We believe that in the "idealized ordinary case," possession of ammunition occurs in connection with eventual possession or use of a firearm. *See id.* at 2579 (Alito, J., dissenting) (recognizing that the categorical approach to the residual clause is not always "more forgiving to defendants"). After all, there is little reason to possess ammunition other than to eventually discharge it from a firearm. And where there is a firearm, the risk that physical force will occur "in the course" of the ammunition-possession offense is substantial.[58] We are aware of

provision was likely added to resolve the circuit split over whether possession of a firearm constitutes a "crime of violence" under § 3142(f)(1)(A). *Compare, e.g., Dillard*, 214 F.3d 88 (concluding that possession of a firearm is a crime of violence) *with United States v. Singleton,* 182 F.3d 7 (D.C. Cir. 1999) (concluding that possession of a firearm is not a crime of violence). This amendment does not affect our Court's decision in *Dillard,* since it was meant only to dispel uncertainty over Congress's intent to make felon-in-possession an eligible offense under § 3142(f)(1).

[56] *Dillard*, 214 F.3d at 92–93.

[57] *Id.* at 93 (emphasis in original).

[58] *Dillard*, 214 F.3d at 95 ("We think that among the convicted felons who illegally possess guns, the number who do so by reason of the utility of guns in threatening or causing violence is significant. We find it difficult to accept the proposition that the risk of violent use of guns by convicted felons who possess them illegally is not 'substantial.'").

situations in which a convicted felon may possess *only* ammunition, such as where a felon is engaged in the sale of ammunition or obtained ammunition for a third party. But this type of possession is not the ordinary case, and it therefore has no bearing on our analysis under the categorical approach.[59] Accordingly, Watkins's possession-of-ammunition offense is categorically a crime of violence under § 3142(f)(1)(A).

The Government offers an alternative theory in support of its right to a detention hearing under § 3142(f)(1)(A), which Judge Vilardo appeared to endorse *sub silentio*.[60] Recall that § 3142(f)(1) concludes with the clause, "in a case that involves."[61] Relying on this clause, the Government reasons that even if the charged offense is not itself a categorical crime of violence, it may nevertheless "involve" a crime of violence under § 3142(f)(1)(A) if the charged

---

[59] The categorical approach does not permit us to consider whether there is any conflict between the "idealized ordinary case" of a crime and a defendant's conduct in a particular case. But even if it did, there is no such conflict here. It is undisputed that Watkins's possession of ammunition led to its discharge from a firearm.

[60] *See* JA 189 (citing *United States v. Bagby*, No. 15-MJ-2135, 2015 WL 8678394 (W.D.N.Y. Dec. 14, 2015), where a magistrate judge held that possession of ammunition by a felon can constitute a "crime of violence" under § 3142(f)(1)(A) if there exists a nexus between the charged offense and a crime of violence).

[61] *See* 18 U.S.C. § 3142(f)(1) ("The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community . . . upon motion of the attorney for the Government, *in a case that involves* . . . ." (emphasis added)).

offense bears a factual nexus to a crime of violence.[62] Thus, because Watkins discharged the ammunition from a firearm, his charged offense of possession of ammunition "involves" a crime of violence.

We reject this interpretation of the word "involves" in § 3142(f)(1) as permitting consideration of related, but uncharged, conduct. Not only would this interpretation produce absurd results, but it is also demonstrably at odds with Congress's intent.

Admittedly, the word "involves" is susceptible to more than one interpretation. It may, for instance, mean "to have within or as part of itself" (*i.e.*, include), or it may mean "to require as a necessary accompaniment" (*i.e.*, entail).[63] The former meaning supports the Government's interpretation, while the latter suggests that the arrestee must actually be charged with the enumerated offense.

As the legislative history confirms, Congress clearly intended the latter meaning. When Congress enacted the Bail Reform Act, it intended to limit the availability of detention hearings to individuals who are actually charged with certain enumerated offenses:

---

[62] At least one Court of Appeals appears to have tentatively espoused this theory. *See United States v. Byrd*, 969 F.2d 106, 110 (5th Cir. 1992) ("[I]t is not necessary that the *charged offense* be a crime of violence; only that the case *involve* a crime of violence or any one or more of the § 3142(f)(1) factors. But the proof of a nexus between the non-violent offense charged and one or more of the six § 3142(f) factors is crucial." (emphasis in original)). Even in *Byrd*, however, the Fifth Circuit concluded that the Government had failed to satisfy the "nexus or involvement requirement." *Id.*

[63] *Involve*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1191 (1981).

25

The committee has determined that whenever a person is *charged* with one of these offenses and the attorney for the Government elects to seek pretrial detention, a hearing should be held so that the judicial officer will focus on the issue of whether, in light of the seriousness of the *offense charged*, and the other factors to be considered under subsection (g), any form of conditional release will be adequate to address the potential danger the defendant may pose to others if released pending trial.[64]

The Supreme Court in *Salerno* also appeared to endorse this narrower interpretation: "The [Bail Reform] Act operates only on individuals who have been arrested for a specific category of

---

[64] S. Rep. No. 98–225, at 21 (emphasis added); *see also id.* at 19 ("Section 3142(e) provides, therefore, that in a case in which a defendant *is charged with one of the serious offenses* described in section 3142(f)(1) . . . a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community, if the judicial officer finds . . . ." (emphasis added)); *id.* at *22 ("[I]f the dangerous nature of the *current offense* is to be a basis of detention, then there should be evidence of the specific elements or circumstances of the offense, such as possession or use of a weapon or threats to a witness, that tend to indicate that the defendant will pose a danger to the safety of the community if released." (emphasis added)).

extremely serious offenses."[65] Accordingly, in order to qualify for a detention hearing under § 3142(f)(1)(A), the Government must prove by a preponderance of the evidence that the charged offense itself constitutes a "crime of violence" as that term is defined in § 3156(a)(4).

## E. Section 3142(f)(1)(E) (Bail Reform Act)

Even if possession of ammunition by a felon were not a categorical crime of violence under § 3142(f)(1)(A), the Government would still have been entitled to a detention hearing in this case. Section 3142(f)(1)(E) mandates a detention hearing in connection with *"any* felony"[66] if the Government proves by a preponderance of the evidence that the charged felony "involves a minor victim or . . . involves the possession or use of a firearm or destructive device. . . ."[67] As explained below, because of their respective contexts, the term "involves" in this subsection bears a different meaning than the term "involves" in the prefatory language to § 3142(f)(1). Whereas the term "involves" in the prefatory language of § 3142(f)(1) restricts a judicial officer's review to the charged

---

[65] *Salerno*, 481 U.S. at 750; *see also id.* at 755 ("The [Bail Reform] Act authorizes the detention prior to trial of arrestees charged with serious felonies who are found after an adversary hearing to pose a threat to the safety of individuals or to the community which no condition of release can dispel.").

[66] 18 U.S.C. § 3142(f)(1)(E) (emphasis added).

[67] *Id.*

27

offense, the term "involves" in § 3142(f)(1)(E) expands the scope of review to the conduct giving rise to the charged offense.

The Supreme Court has repeatedly affirmed that "identical language may convey varying content when used in different statutes, sometimes even in different provisions of the same statute."[68] The "cardinal rule" is that "statutory language must be read in context since a phrase gathers meaning from the words around it."[69] Here, the statute's context—both textual and historical—makes clear that Congress intended the word "involves" to have a broader and more permissive meaning in § 3142(f)(1)(E) than in the prefatory language to § 3142(f)(1).

First, the prefatory phrase "in a case that involves" in § 3142(f)(1) refers, variously, to a "crime," an "offense," and a "felony." Each of these terms suggests charged conduct. By contrast, the phrase "any felony . . . that involves" in § 3142(f)(1)(E) refers to a

---

[68] *Yates v. United States*, 135 S. Ct. 1074, 1082 (2015) (plurality opinion); *see also Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 608–09 (1932) ("Most words have different shades of meaning, and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section. Undoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning. But the presumption is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." (internal citation omitted)).

[69] *General Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 596 (2004) (internal alterations and quotation marks omitted).

"minor victim" or "the possession or use of a firearm." These phrases suggest factual details surrounding the charged conduct.[70] Accordingly, when analyzing whether the Government is entitled to a detention hearing under § 3142(f)(1)(E), we may consider the actual conduct at issue in the specific case.

Legislative history lends further support to this textual interpretation. Subsection (E) was enacted as part of the Adam Walsh Child Protection and Safety Act of 2006 (the "Adam Walsh Act").[71] One of the purposes of the Adam Walsh Act is "[t]o protect children from sexual exploitation and violent crime."[72] In order to afford minor victims of crime the greatest degree of protection, Congress added § 3142(f)(1)(E), which authorizes a pretrial detention hearing

---

[70] Furthermore, as § 3156(a)(4)(A) & (B) illustrate, other sections of the Bail Reform Act suggest that courts should not consider the unique facts and circumstances surrounding a particular felony or offense by using phrases such as "that has as an element" or "that, by its nature, involves." *See* 18 U.S.C. § 3156(a)(4)(A), (B); *Dimaya*, 138 S. Ct. at 1211, 1217 (citing *Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004)) (noting that disregarding "the particular facts underlying a conviction" for purposes of 18 U.S.C. § 16(b) rests on that statute's use of the language "by its nature" (internal quotation marks omitted)). No such language appears in § 3142(f)(1)(E). *See Dean v. United States*, 556 U.S. 568, 573 (2009) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted)).

[71] Pub. L. No. 109–248, § 216, 120 Stat. 587, 617 (2006) (codified at 18 U.S.C. § 3142).

[72] *Id.* at 587.

for any individual who commits a felony "that involves a minor victim" or, as relevant to Watkins, "that involves the possession or use of a firearm."[73] By using the phrase "that involves" in this subsection, Congress clearly intended for courts to pierce the veil of the charged offense and consider the conduct underlying the offense, including who was harmed and whether any firearms were used in the course of committing the offense. If courts could not do so, felons who clearly pose the risks contemplated by the Adam Walsh Act (*i.e.*, by targeting minors or employing firearms) might not be subject to detention hearings unless the involvement of a minor or possession or use of a firearm was an element of the charged crime.

Our interpretation of the phrase "that involves" is confirmed when we consider another section of the Bail Reform Act amended by the Adam Walsh Act: § 3142(c)(1)(B). Section 3142(c)(1)(B) now mandates that "[i]n any case *that involves a minor victim* under [certain enumerated statutes], any release order shall contain, at a minimum, a condition of electronic monitoring."[74] While most of the enumerated statutes in this list expressly criminalize conduct with minors, some do not.[75] Thus, Congress must have intended for

---

[73] 18 U.S.C. § 3142(f)(1)(E).

[74] *Id.* § 3142(c)(1)(B).

[75] *Compare, e.g.*, 18 U.S.C. § 1591 (sex trafficking of children); *id.* § 2251 (sexual exploitation of children); *id* § 2423 (transportation of minors), *with id.* § 2242 (sexual abuse); *id.* § 2244(a)(1) (abusive sexual contact); *id.* § 2421 (transportation in interstate commerce with intent that the individual being transported engage in prostitution).

judicial officers to look beyond the elements of the charged offense to determine whether any minors were "involved" in the particular offense committed. In sum, the phrase "that involves" in § 3142(f)(1)(E) warrants a conduct-specific inquiry in which the judicial officer may look beyond the elements of the charged offense to consider the actual conduct underlying the arrestee's charged offense.

Here, the conduct underlying Watkins's possession-of-ammunition charge plainly involved the use of a firearm. After all, Watkins discharged no fewer than nine bullets from an illegally possessed firearm. Accordingly, the Government was also entitled to a detention hearing under § 3142(f)(1)(E).

\* \* \*

Having established that the Government was entitled to a pretrial detention hearing under both § 3142(f)(1)(A) and § 3142(f)(1)(E), we find no clear error in the District Court's assessment of Watkins's future dangerousness or its decision to order Watkins's detention. Accordingly, we affirmed the District Court's October 9 Order and denied Watkins's motion for bail.

### III. CONCLUSION

To summarize, we hold as follows:

> (1) The "residual clause" in 18 U.S.C. § 3156(a)(4)(B) of the Bail Reform Act is not unconstitutionally vague.

31

(2) Possession of ammunition by a convicted felon constitutes a categorical "crime of violence" under § 3142(f)(1)(A) of the Bail Reform Act.

(3) The threshold decision to hold a pretrial detention hearing under § 3142(f)(1)(A) of the Bail Reform Act rests on a judicial determination that the defendant is charged with a crime of violence; it is not enough to show that a significant factual nexus exists between the charged offense and a crime of violence.

(4) Pursuant to § 3142(f)(1)(E), judicial officers may consider the conduct underlying an arrestee's charged offense to determine whether it "involves the possession or use of a firearm."

For the foregoing reasons, we **AFFIRMED** the District Court's October 9 Order and **DENIED** Watkins's motion for bail.